**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK EDWARD KEARNEY,** | : | |
| | : | **Civil No. 3:11-CV-1419** |
| **Plaintiff** | : | |
| | : | **(Judge Caputo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JPC EQUESTRIAN, INC.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.   Introduction and Statement of the Case

*Pro se* Plaintiff, Mark Kearney initiated this action against JPC Equestrian, Inc.

("JPC"), and one of JPC's executives, Varun Sharma ("Sharma"), in the

Commonwealth of Kentucky, 22nd Judicial Circuit, Fayette Circuit Court, at Civil

Case No. 11-CI-869, on February 16, 2011.  On March 9, 2011, JPC and Sharma

removed the case to the United States District Court for the Eastern District of

Kentucky, and the case was assigned to the Honorable Jennifer B. Coffman.  On

August 2, 2011, Judge Coffman issued a Memorandum and Order dismissing

Plaintiff's claims against Sharma and transferring the case as against JPC to this

Court.

In the original complaint, Kearney alleged the following factual averments: On

January 28, 2002, Kearney and JPC entered into a Sales Representation Agreement,

whereby Kearney agreed to provide sales and marketing services for JPC.  (Doc. 1-1)

Serving as a Sales Representative for JPC, Kearney was responsible for implementing

a marketing program to sell JPC's products, included initiating business relationships

with retailers within Kearney's geographic sales territory.  Id.  The agreement limits

compensation for Kearney's services to "commissions on those sales made by the

company which directly result from [Kearney's] introductions or other interventions."

Id.  Moreover, Kearney was to earn commissions under the agreement at a rate of ten

percent of the total net payable invoices.[1]  Id.  Furthermore, the Agreement required

JPC to provide samples at no cost to Kearney.  Id.  Finally, according the terms, JPC

would provide to Kearney a statement showing the calculation of "commissions paid,

earned and/or reimbursed," on a monthly basis at the time of payment of

commissions.  Id.  Kearney served as Sales Representative for JPC until August 6,

2010, when he claims that JPC terminated him because the company "decided to go

with young female riders."

Subsequently, Kearney alleged that JPC failed to pay his ten percent

commission on the "Petsmart account," instead paying him only five percent for the

first four years.  At that point, Kearney claimed that JPC converted the Petsmart

_____

[1]"Net Payable Invoice," under the agreement, "shall equal the gross amount
of an invoice, less discounts, sales taxes, if any, allowances, and returns."

account into a "house account," and thus paid him no commissions whatsoever. Kearney also alleges that JPC "sold direct" to a number of Kearney's customers in order to avoid paying Kearney a commission as required under the Agreement. Finally, Kearney alleges "unlawful dismissal," "mental anguish," and punitive claims. (Id.)

JPC moved to dismiss the complaint on September 16, 2011. (Doc. 30) Following briefing on the motion, we issued a report and recommendation in which we recommended that the District Court dismiss all of Kearney's claims except for those claims alleging breach of contract. (Doc. 42) On March 26, 2012, the District Court entered an order adopting the report and recommendation, and dismissed all claims other than Plaintiff's claims for breach of contract, but did so without prejudice to the Plaintiff endeavoring to amend his complaint if he believed he had viable legal claims other than those for breach of contract. (Doc. 48)

On April 16, 2012, Kearney filed two motions that are currently pending before the Court. In the first, the Plaintiff seeks leave to add Varun Sharma as a Defendant pursuant to Rule 20 of the Federal Rules of Civil Procedure authorizing joinder of parties. (Doc. 50 ) In the second, the Plaintiff seeks leave to file an amended complaint to include not only claims for breach of contract, but also claims for fraud; violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO");

3

negligent misrepresentation; breach of fiduciary duty and the implied covenant of good faith and fair dealing; tortious interference with contractual relations; and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA").  Plaintiff filed a brief in support of both motions on May 7, 2012 (Doc. 53).  Defendants filed a brief opposing the motions on May 21, 2012.

In his motion in support of his proposed amended complaint, Kearney avers that he entered into a verbal employment agreement with JPC on January 28, 2002. According to Kearney, this agreement provided that all gross sales into Plaintiff's sales territory would be paid a commission of 10%, less shipping; no "house" accounts would be allowed; and no sales manager would be hired to oversee the sales territory.  Several months later the contract was memorialized. (Doc. 1-1)  According to Plaintiff, when the parties entered into the oral agreement, JPC had no customers within Plaintiff's sales territory, and Kearney brought over 300 customers to JPC as a result of his efforts and his extensive contacts with potential customers in the field. (Doc. 51 ¶ 3)  Plaintiff claims that over eight years, he invested over $600,000 of his own money developing the sales territory into one that grossed approximately $1.3 million in sales per year.  (Id. ¶ 4.)

Despite these apparent successes, Plaintiff claims that soon after the contract was signed, problems emerged.  Plaintiff contends that sales to large retail customers

4

were only paid a 5% commission as opposed to the 10% commission agreed upon. In addition, at least one other account was converted into a "house" account, and no commission was paid on the account.  Likewise, sales of "certain items" to unspecified customers in 14 unspecified states were allegedly paid no commissions. (Id. ¶ 5.)  Other customers within Plaintiff's sales territory were allegedly omitted from the commission reports, and no sales to these customers yielded the commissions that Plaintiff alleges he was owed.

Plaintiff claims that on August 6, 2010, with no notice, Defendant terminated Plaintiff's contract via a telephone call.  According to Plaintiff, the reason JPC gave for ending the sales relationship was that the company had "decided to go with young girls" as sales agents.  (Id. ¶ 7.)  At the time, Plaintiff was 56 years old and his sales territory had shown a 22% growth in gross sales year over year.  (Id.)

On the basis of the foregoing representations, and supplemental factual averments set forth in the proposed amended complaint, Plaintiff seeks leave to bring claims against JPC and Varun Sharma for breach of contract, fraud, negligent misrepresentation, breach of fiduciary duty/implied duty of good faith, and tortious interference with contract.  In addition, Plaintiff attempts to include new claims for alleged violations of RICO and the ADEA based upon the same alleged conduct. (Doc. 51)

Upon careful consideration of Plaintiff's motions and the competing briefs, we continue to find that Plaintiff's attempts to bring claims sounding in tort against JPC are unavailing, as we explain below. In contrast, we find that Plaintiff should be permitted to amend his complaint to include claims for breach of contract and age discrimination. We also find that Plaintiff has failed to demonstrate why Varun Sharma should be joined as a Defendant in this action, since Plaintiff has failed credibly to allege any actions that Mr. Sharma is claimed to have taken outside of his role as an executive with JPC, which is indisputably the party to the sales representative contract that provides the basis for Plaintiff's remaining colorable claims in this case. Accordingly, for the following reasons we will recommend that Plaintiff's motions be granted in part and denied in part. We recommend that Plaintiff's amended complaint be permitted to be filed, but only with respect to his claims against JPC for breach of contract and age discrimination. We will recommend that the District Court decline to join Varun Sharma as a Defendant, or to permit Plaintiff to prosecute the various tort and RICO claims he has attempted to bring.

## II.   Discussion

## A.   Motion to Amend - Legal Standard

Rule 15 of the Federal Rules of Civil Procedure sets forth the rules governing amended and supplemental pleadings.  Rule 15(a) provides that if more than 21 days has elapsed after a Defendant has served a motion to dismiss under Rule 12(b), a party may amend its pleading only with the opposing party's written consent or the court's leave.  Fed.R.Civ.P. 15(a).  The Rule directs that "[t]he court should freely give leave when justice so requires ."  Id.  Nonetheless, the policy favoring liberal amendments is not "unbounded."  Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir.1990).  The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court.  Foman v. Davis, 371 U.S. 178, 182 (1962); Waterfront Renaissance Assoc. v. Phila., 701 F. Supp. 2d 633, 639 (E.D. Pa. 2010).  Therefore, decisions regarding motions to amend or supplement pleadings will not be disturbed absent a abuse of that discretion. See e.g., Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001).  A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would

be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir.2000) (citing Foman, 371 U.S. at 182).

In this context, " '[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). In accordance with the foregoing guidelines, a court may deny leave to amend where the proposed amendment would be futile by attempting to assert claims for which the plaintiff is not entitled to relief. See Milburn v. Girard, 441 F. Supp. 184, 187 (E.D. Pa. 1977) ("One proper justification for denying leave to amend is futility. If the amendment sets forth a claim upon which, as a matter of law, plaintiff is not entitled to relief, leave to amend should be denied.") (citations omitted). It follows, therefore, that when considering whether to permit an amended complaint, a court may consider whether the plaintiff's proposed amended allegations state a claim upon which relief could be granted. See Smith v. Anchor Motor Freight Co., 428 F. Supp. 21, 22 (M.D. Pa. 1976). In other words, "the proper test for evaluating the legal sufficiency of a proposed amended complaint is 'the same test that is used when the legal sufficiency of a pleading is challenged under Rule 12(b)(6) . . . ." Id. (quoting 3 Moore's Federal Practice ¶ 15.04(4) (1974)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure, in turn, provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally

a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." Id.  In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In  practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.' <u>Id.</u> at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id</u>." <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## B.   With the Exception of Plaintiff' Contract and Age Discrimination Claims, Plaintiff's Amended Complaint Fails to Set Forth Claims Upon Which Relief May Be Granted

We have carefully reviewed Plaintiff's proposed amended complaint, and his brief in support of his motion to amend.  Following this review, we conclude that the only colorable claims alleged in the amended complaint are for breach of contract and age discrimination.  Plaintiff's tort claims and his prayers for relief under RICO simply fail to state claims upon which relief may be granted, and, therefore, we find that granting Plaintiff leave to amend the complaint to add these non-contract claims would be futile.  Accordingly, we will recommend that Plaintiff be permitted to file the amended complaint only insofar as it asserts claims for breach of contract and age discrimination, and denied in all other respects.

### 1.   Plaintiff's Claims For Fraud, Negligent Misrepresentation, Breach of Fiduciary Duty/Implied Duty of Good Faith, and Tortious Interference Claims are Barred By the "Gist of the Action" and "Economic Loss" Doctrines

Defendants urge the Court to deny Kearney's motion to amend his complaint to include claims sounding in tort for alleged fraud, negligent misrepresentation, and tortious interference with contract on the grounds that these claims are all precluded by the "gist of the action" doctrine, or the closely related "economic loss" doctrine. We agree.

In an opinion predicting that the Pennsylvania Supreme Court would adopt the "gist of the action" doctrine, as it had been developed by the Pennsylvania Superior Court, the United States Court of Appeals explained the doctrine and its application as follows:

> In eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10 (Pa. Super. Ct.2002), the Pennsylvania Superior Court, stated  that the "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims." Id. at 14. The Court then described the difference between contract and tort claims as follows: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." Id. (quoting Bash v. Bell Telephone Co., 411 Pa.Super. 347, 601 A.2d 825, 829 (Pa. Super. Ct. 1992)). In eToll the Court found that the "fraud at issue was not so tangential to the parties' relationship so as to make fraud the gist of the action." eToll, 811 A.2d at 21. Rather, the court stated, the fraud claims were so "inextricably intertwined with the contract claims" that they were barred as a matter of law from being raised independently. Id. The Superior Court has applied the "gist of the action" doctrine in other cases. See, e.g., Pittsburgh Construction Co. v. Griffith, 834 A.2d 572 (Pa. Super. Ct. 2003) (applying eToll and stating that "courts are cautious about permitting tort recovery based on contractual breaches"); Pennsylvania Manufacturers' Association Insurance Co. v. L.B. Smith, 831 A.2d 1178, 1181 (Pa. Super. Ct. 2003) ("The 'gist of the action' doctrine is designed to maintain the conceptual distinction between breach of contract and tort claims."); Freestone v. New England Log Homes, Inc., 819 A.2d 550 (Pa. Super. Ct. 2003); see also Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103-04 (3d Cir.2001). From our examination of the Pennsylvania cases, we conclude that the "gist of the action" doctrine cannot be captured by any

14

precisely worded test. Instead, the doctrine appears to call for a fact-intensive judgment as to the true nature of a claim.

Williams v. Hilton Group PLC, 93 F. App'x 384, 385-86 (3d Cir. 2004).  Similarly, "[t]he economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)).

In this case, a "fact-intensive judgment" of Plaintiff's proposed amended tort claims reveals that they are all alleged to arise directly from the duties imposed by the contract that the parties entered governing Plaintiff's role as a sales representative. Thus, in support of his claim for fraud, Plaintiff alleges that JPC "committed fraud . . . by selling direct to Plaintiff's customers and not paying commission; nor notifying Plaintiff of the sales"). (Doc. 51, "Fraud", at ¶ 2)  Similarly, in his claim for negligent misrepresentation, Plaintiff avers that he suffered "pecuniary loss" for commissions he was owed under the contract.  (Id., "Negligent Misrepresentation" at ¶¶ 1-2.)  Likewise, in his proposed claim for "Breach of Fiduciary Duty," Plaintiff represents that Defendant breached a fiduciary duty "[b]y leaving off sales to certain customers, by selling direct, and paying no commission" – which Plaintiff has elsewhere argued was owed pursuant to the terms of the contract itself.  (Id., "Breach

of Fiduciary Duty" at ¶ 5.)  Even more explicitly, Plaintiff contends that he "lost commissions and was thereby damaged . . . This is contrary to the terms of the contract . . . ."  (Id., "Tortious Interference" at ¶¶ 3, 7.)

Plaintiff's candor in the proposed amended complaint makes it abundantly clear that in his various tort theories of liability, he is merely recharacterizing contract-based claims as claims sounding in tort.  The "gist of the action" doctrine is designed to prevent precisely this type of pleading, and to limit parties' claims arising out of the contractual duties specified under the contract itself to remedies provided by contract law.  Plaintiff's efforts to repackage his contract claims under a variety of tort theories is thus unavailing, and he should be limited in this case to pursuing his claims for breach of the duties imposed under the alleged contract itself.

###     2.     Plaintiff's Claim for Breach of Fiduciary Duty is Without Merit

Plaintiff also attempts to frame his contractual business dispute with JPC into causes of action for breach of fiduciary duty and of an implied covenant of good faith and fair dealing that he contends flows from the terms of the contract itself.  Again, we disagree.  Instead, we find that Plaintiff has failed to allege sufficient facts to plead adequately the existence of a fiduciary relationship between the parties.

To demonstrate the existence of a fiduciary duty under Pennsylvania law, a plaintiff must first adequately plead the existence of an agency relationship.  eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 21 (Pa. Super. Ct. 2002).  The Pennsylvania Supreme Court has explained the parameters of the principal-agent relationship as follows:

> The law is clear in Pennsylvania that the three basic elements of agency are: " 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.' " Scott v. Purcell, 490 Pa. 109, 117, 415 A.2d 56, 60 (1980), quoting Restatement (Second) of Agency § 1, Comment b (1958); see also Reid v. Ruffin, 503 Pa. 458, 463, 469 A.2d 1030, 1033 (1983). "Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." Smalich v. Westfall, 440 Pa. 409, 413, 269 A.2d 476, 480 (1971). The burden of establishing an agency relationship rests with the party asserting the relationship. Scott, 490 Pa. at 117 n. 8, 415 A.2d at 61 n. 8. "An agency relationship is a fiduciary one, and the agent is subject to a duty of loyalty to act only for the principal's benefit." Sutliff v. Sutliff, 515 Pa. 393, 404, 528 A.2d 1318, 1323 (1987), citing Restatement (Second) of Agency § 387 (1958). Thus, in all matters affecting the subject of the agency, the agent must act with the utmost good faith in furthering and advancing the principal's interests, including a duty to disclose to the principal all relevant information. See Sylvester v. Beck, 406 Pa. 607, 610-11, 178 A.2d 755, 757 (1962).

Basile v. H & R Block, 761 A2d 1115, 1120 (Pa. 2000).  At the same time, the Pennsylvania Supreme Court took pains to emphasize that not all acts taken on behalf of another will lead to the creation of an agency relationship:

17

> The special relationship arising from an agency agreement, with its concomitant heightened duty, cannot arise from any and all actions, no matter how trivial, arguably undertaken on another's behalf. Rather, the action must be a matter of consequence or trust, such as the ability to actually bind the principal or alter the principal's legal relations. Indeed, implicit in the long-standing Pennsylvania requirement that the principal manifest an intention that the agent act on the principal's behalf is the notion that the agent has authority to alter the principal's relationships with third parties, such as binding the principal to a contract. Notably, the Restatement, which we have cited with approval in this area in the past, specifically recognizes as much. See Restatement (Second) of Agency § 12 ("An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself.").

Id. at 1121.  In this case, Plaintiff has failed to plead facts that would support his contention that an agency agreement was formed between himself and JPC.  Upon consideration, we do not find that Plaintiff has sufficiently alleged facts to show that the relationship between the parties was something other than a contractual arrangement.  Although this agreement as pled certainly appears to impose duties on each party, any relationship formed thereby is a product of the contract itself, and not on separate principal-agent considerations.  Plaintiff has alleged that he arranged for sales, and that customers remitted funds to JPC, which thereafter failed to pay Plaintiff the full amount of the commission he claims to have been owed.  Although there may be scenarios in which a fiduciary relationship may be found upon further

factual averments demonstrating a relationship founded upon trust, Plaintiff has not pleaded the existence of such a relationship in this case.

"A business relationship between two parties to a commercial contract dealing at arms length does not create a 'special relationship' under Pennsylvania law." Freedom Properties, L.P. v. Lansdale Warehouse Co., Inc., No. 06-5469, 2007 WL 2254422, at *6 (E.D. Pa. Aug. 2, 2007). This principle applies in this case, where the Plaintiff has alleged that he and JPC were party to a sales agreement that imposed certain duties upon each party pursuant to an arms-length contract. There is nothing to suggest that this business relationship was something other than that of a company and a sales representative. For these reasons, Plaintiff's claim that JPC breached an independent fiduciary duty to him should be dismissed.

### 3.   Plaintiff's Claim for Breach of the Covenant of Good Faith is Subsumed Into His Breach of Contract Claim

Plaintiff's claim that JPC breached its duty of good faith should also be dismissed, but for a different reason. As a general rule, allegations of a breach of the covenant of good faith sound in contract, rather than tort. See Creeger Brick & Bldg. Supply, Inc., v. Mid-State Bank & Trust Co., 560 A.2d 151, 153 (Pa. Super. Ct. 1989) ("Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts."). As a result, courts have found that the breach of the covenant of good

faith is subsumed in a claim for breach of contract.  See McHale v. NuEnergy Group,

No. Civ. A. 01-4111, 2002 WL 321797, *8 (E.D. Pa. Feb. 27, 2002) (concluding that

Pennsylvania law would not recognize a claim for breach of the covenant of good

faith and fair dealing as a separate cause of action apart from the breach of contract

claim, since the actions forming the basis of the breach of contract claim were

essentially the same as those brought in support of the bad faith claim); see also JHE,

Inc. v. Se. Pa. Transp. Auth., 2002 WL 1018941,  *7 (Pa. Com. Pl. May 17, 2002)

("[A] breach of the covenant of good faith is nothing more than a breach of contract

claim and . . . separate causes of action cannot be maintained for each, even in the

alternative."); Commonwealth v. BASF Corp., No. 3127, 2001 WL 1807788, *12 (Pa.

Com. Pl. Mar. 15, 2001) ("Pennsylvania law does not allow for a separate cause of

action for breach of either an express or implied duty of good faith, absent a breach

of the underlying contract.").  In short, Pennsylvania law grafts onto all contracts a

responsibility by the contracting parties to deal fairly with one another.  However,

Pennsylvania law does not recognize an independent, and free-standing, duty of fair

dealing outside a contractual context.  As we have previously explained:

> Whether express or implied, the covenant of good faith and fair dealing
> acts as a term of the contract, and that covenant arises from the contract
> itself. See Ash v. Cont'l Ins. Co., 593 Pa. 523, 932 A.2d 877, 884
> (2007); Birth Center, 787 A.2d at 385;  Murphy, 777 A.2d at 434 & n.
> 11; Gray, 223 A.2d at 11 ("We believe that this recent case law,

employing contractual terms for the obligation of the insurer to represent in good faith the rights of the insured, indicates that a breach of such an obligation constitutes a breach of the insurance contract for which an action in assumpsit will lie."); Cowden v. Aetna Cas. & Sur. Co., 389 Pa. 459, 134 A.2d 223, 229 (1957).

Because the covenant of good faith and fair dealing arises from the contract and not due to the mere relationship of the parties-as, for example, a fiduciary duty-a breach of the covenant sounds in contract, not tort. See Ash, 932 A.2d at 884. There is, however, no independent cause of action for a breach of the covenant of good faith and fair dealing-arising in contract-in Pennsylvania because such a breach is merely a breach of contract. See Birth Center, 787 A.2d at 385-86; Gray, 223 A.2d at 11. It has been said that a breach of the implied covenant of good faith and fair dealing merges with a breach of contract claim. See Meyer v. Cuna Mut. Group, No. 03-CV-602, 2007 WL 2907276, at *14-15 (W.D.Pa. Sept. 28) (citing cases).

Zaloga v. Provident Life and Acc. Ins. Co. of America, 671 F.Supp.2d 623, 630-31 (M.D.Pa. 2009).  Since there is no separate cause of action under Pennsylvania law for breach of the duties of good faith and fair dealing; Chanel, Inc. v. Jupiter Group, Inc., Civ. No. 3:04-CV-1540, 2006 U.S. Dist. LEXIS 43363, at *6 (M.D. Pa. June 27, 2006); In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 549 (D.N.J. 2004); Blue Mt. Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 400-01 (E.D. Pa. 2002); LSI Title Agency, Inc. v. Eval. Servs., Inc., 951 A.2d 384, 391 (Pa. Super. Ct. 2008), a claim for breach of the duties of good faith and fair dealing is merely a claim for breach of the underlying contract.  Zaloga v. Provident Life and Acc. Ins. Co. of America, 671 F.Supp.2d 623, 630-631 (M.D.Pa. 2009).

21

In this case, Plaintiff has already pleaded that JPC breached the terms of its contract with him.  His claim that the company also breached a duty of good faith that flowed from that contract is not separate and independent from his underlying claim for breach of contract, and should accordingly be dismissed.

### 4      Plaintiff's Proposed RICO Claims Fail

In his proposed amended complaint, Plaintiff has attempted to include an entirely new claim for alleged RICO violations stemming from the same conduct that forms the basis for Plaintiff's breach of contract claims.  In this regard, Kearney contends that JPC, at the "specific instruction of Varun Sharma," intentionally omitted certain accounts from reconciliation statements that were provided to Plaintiff, thus resulting in Plaintiff losing commissions that he contends he was owed under his sales contract with JPC.  (Doc. 51, Am. Compl., at ¶ 4)  In addition, Plaintiff claims that beginning in 2004 and ending in 2010, various wire transfers of commissions sent from JPC's bank accounts in Pennsylvania to Kearney's bank account in Lexington, Kentucky, were "intentionally 'shorted'" – by which Kearney apparently means he received less than the full commissions he maintains he was owed under the sales agreement.  (Id. ¶ 5.)  In still other cases, Plaintiff notes that he received no commissions for sales generated.  (Id. ¶¶ 6-7.)  On the basis of these factual averments, Plaintiff contends that he has adequately pleaded a violation of

RICO.  Plaintiff is mistaken, and misapprehends the purpose and application of this federal statute.

Under the Racketeer Influenced and Corrupt Organizations Act, "it shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b).  In order to make out a claim for a civil RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show: (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated either directly or indirectly in the conduct or affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that included at least two racketeering acts. Annulli v. Panikkar, 200 F.3d 189, 198 (3d Cir. 1999), overruled on other grounds by Rotella v. Wood, 528 U.S. 549 (2000).

The RICO statute defines "racketeering activity" as "any act or threat involving" specified state law crimes, and any act indictable under various specified federal criminal offenses, including mail fraud.  18 U.S.C. § 1961(1).  Thus, in order to prove a "pattern" of racketeering activity, "a plaintiff must show that defendant engaged in at least two of the predicate acts of racketeering defined in § 1961(1)."

Schroeder v. Acceleration Life Ins. Co., 972 F.2d 41, 47 (3d Cir. 1992).  In this case, we find Plaintiff has simply failed adequately to allege that JPC has engaged in a pattern of racketeering activity as required by the statute.  Instead, Kearney has alleged that he was not paid what he was owed under the terms of his sales agreement, and that JPC is in material breach of the terms of that agreement for a variety of reasons, including by shorting Kearney on some or all of the commissions he was owed on certain accounts.  While we find that Kearney has adequately pleaded claims for breach of contract, we also find that these same allegations are inadequate to support a claim for RICO violations.  The Third Circuit explained in a similar case in which a plaintiff endeavored to rely upon breach of contract allegations to make out a RICO claim:

> [T]heft by deception, like a simple breach of contract or intentional interference with contract, is not a predicate act of racketeering activity enumerated in § 1961(1).  Even though § 1961 and its mail and wire fraud predicates have been interpreted with flexibility, courts discussing the state crime of theft, and its analogues, have refused to read it into § 1961's expansive list.

> This is for good reason.  First, RICO's list of acts constituting predicate acts of racketeering activity is exhaustive.  To read it otherwise would be usurp the role of Congress in drafting statutes.  Second, if garden-variety state law crimes, torts, and contract breaches were to constitute predicate acts of racketeering (along with mail and wire fraud), civil RICO law, which is already a behemoth, would swallow state civil and criminal law whole.  Virtually every litigant would have the incentive to file their breach of contract and tort claims under the federal civil

> RICO Act, as treble damages and attorney's fees would be sight.  We
> will not read language into § 1961 to federalize every state tort, contract,
> and criminal law action.

Annulli, 200 F.3d at 199-200 (internal citations omitted).  The Third Circuit's guidance in Annulli is particularly apt in the instant case, where Kearney is improperly attempting to convert a business contract dispute over JPC's performance under a sales agreement into a federal RICO action predicated on racketeering activity.  Although RICO is expansive, Plaintiff's limited allegations simply do not adequately plead a claim for relief under RICO, and should be dismissed.

### 5.   Plaintiff's Age Discrimination Claim Should Be Permitted to Proceed

Finally, Plaintiff has alleged that JPC discriminated against him on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., by terminating his employment in favor of using younger women to act as sales agents.  JPC argues that this claim should be dismissed because it is untimely, and because Plaintiff cannot meet his burden of proof on the claim.  With respect to this claim, we disagree with Defendants that the ADEA claim is amenable to disposition on a motion to dismiss.

At the outset, Defendants have urged the Court to dismiss Plaintiff's age discrimination claim on the grounds that Plaintiff has failed to allege facts showing

25

that he was qualified for the employment position in question.  In this regard,

Defendants argue that Plaintiff has failed to satisfy the first prong of the familiar

McDonnell Douglas burden-shifting framework that is employed with respect to

ADEA claims.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Keller

v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (describing the

prima facie showing a plaintiff must make under McDonnell Douglas, as applied to

an ADEA claim); see also Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir.

2009) (applying McDonnell Douglas to ADEA claim).

In an ADEA case, under McDonnell Douglas, in order to make out a prima

facie case, a plaintiff must show (1) he is 40 years old or older; (2) that the defendant

took adverse employment action against him; (3) that the plaintiff was qualified for

the employment position in question; and (4) that the plaintiff was ultimately replaced

by another employee who was sufficiently younger to support an inference of

discriminatory animus.  See Smith v. City of Allentown, 589 F.3d at 689.

Defendant contends that Plaintiff has failed even at the pleading stage to

comply with this standard, because JPC argues that Plaintiff has failed to make any

allegations to show that he was qualified for the sales position in question.  (Doc. 54,

at 21)  We find that Plaintiff's age discrimination claim should not be dismissed on

this ground.  Plaintiff appears to have worked as a sales representative for JPC for

approximately eight years, and he alleges that during that time he was responsible for generating considerable gross revenues for the company as a result of his efforts. We recognize Defendant's position that it terminated Plaintiff's employment for a legitimate reason, but we do not find that on the pleadings alone, Plaintiff has failed to aver sufficient facts that he was at least qualified for the sales position. To the contrary, the employment relationship between Plaintiff and Defendant lasted for a number of years, and suggests that Plaintiff may have been well qualified to act as a sales representative for the company. Because Defendant has provided no other basis for dismissing this discrimination claim on its merits based upon the pleadings, we are constrained to recommend that the District Court deny Defendant's motion to resolve this issue on its merits at the outset of this litigation.

In addition, the Defendants raise a procedural bar to this ADEA claim, a procedural bard which may have greater legal substance. Although the ADEA creates a private right of action for unlawful employment discrimination on the basis of age, the Act imposes on private litigants a number of procedural requirements that must be satisfied before they may commence litigation against their employers. In this regard, the statue provides that a 60-day notice of intent to sue must be filed with the Secretary of Labor "within one hundred and eighty days after the alleged unlawful practice occurred." 29 U.S.C. § 622(d)(1). This filing requirement begins to run

27

from the date of the allegedly unlawful practice.  Bonham v. Dresser Indus., Inc., 569 F.2d 187, 191 (3d Cir. 1977).  The United States Court of Appeals for the Third Circuit has construed the 180-day filing requirement "to be in the nature of a statute of limitations."  Id. at 193.

The statute of limitations is an affirmative defense rather than a jurisdictional bar.  Callowhill v. Allen-Sherman-Hoff Co., Inc., 832 F.2d 269, 272 (3d Cir. 1987). Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in a party's answer to the complaint.  Rule 12(b) provides that "[e]very defense . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion . . . ."  The defenses listed in Rule 12(b), in turn, do not include affirmative defenses.

However, pursuant to the so-called "Third Circuit Rule", a limitations defense may be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).  In cases where the statutory bar is not apparent from the face of the

complaint, then it should not provide the basis for dismissal under Rule 12(b)(6). <u>Id.</u> (quoting <u>Bethel v. Jendoco Constr. Corp.</u>, 570 F.2d 1168, 1174 (3d Cir. 1978)).

In this case it appears Plaintiff may have taken no steps at all to comply with the procedural requirements imposed by the ADEA that are a prerequisite to pursuing this age discrimination claim.  Plaintiff has alleged that JPC terminated its agreement with him in 2010, and Defendants have represented that Plaintiff has taken no action to comply with this threshold procedural requirement.  In the face of this assertion, Plaintiff has failed to respond in any way to explain that he has, in fact, complied with this procedural requirement to bringing suit.

This procedural requirement may well be an absolute bar to this claim.  Upon consideration, however, although we have serious doubts as to whether Plaintiff has complied with the procedural requirements imposed by the ADEA, in an abundance of caution, we will decline to recommend that the District Court dismiss this cause of action on the basis of this affirmative defense at this time.  Instead, we recommend that the Court refrain from ruling upon the validity of this affirmative defense until a later, specifically tailored dispositive motion is filed with the benefit of supporting evidence that may be considered fully at that time.  At that time, to the extent Plaintiff has a legitimate response to this defense, he may assert it and support it as this litigation progresses. To the extent Kearney has no response or his responses are

29

unavailing, Defendant will not be prejudiced by having this claim disposed of at a later point during the action. Because Defendant has provided no other basis for dismissing this discrimination claim on the pleadings, we are constrained to recommend that the District Court deny Defendant's motion, and permit Plaintiff to amend his complaint to include a claim for violation of the ADEA, at this time subject to consideration of a subsequent dispositive motion.

## B.   Plaintiff's Motion to Join Varun Sharma Should Be Denied

Turning to Plaintiff's motion to join Varun Sharma as a Defendant along with JPC, we recommend that the motion be denied.  Plaintiff has failed to justify joining a senior executive of JPC, or to explain how he has any independent claims against this individual that are separate or distinct from those brought against JPC itself. Furthermore, since we have recommended that Plaintiff's tort, good faith, and RICO claims be dismissed, and that only Plaintiff's contract and ADEA claims be permitted to go forward, we find there is no basis to include Mr. Sharma as a Defendant because Mr. Sharma could not be liable for either claim on the facts alleged.

Rule 20 of the Federal Rules of Civil Procedure provides in part as follows: Persons . . . may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out

> of the same transaction, occurrence, or series of
> transactions or occurrences; and
> (B) any question of law or fact in common to all defendants
> will arise in the action.

Fed. R. Civ. P. 20.  Thus, in order to join an individual defendant under Rule 20 of

the Federal Rules of Civil Procedure, the plaintiff must demonstrate a right to relief

against each defendant; in the absence of a right to relief against the defendant to be

joined, joinder is improper.  See USX Corp. v. Adriatic Ins. Co., 64 F. Supp. 2d 469,

476 (W.D. Pa. 1998) ("[T]he prerequisite to invoking Rule 20 is the ability to

demonstrate some right of relief against the party to be joined.")

      With respect to Plaintiff's contract claim, there appears to be no dispute that

the sales agreement was made between JPC and Kearney, and under Pennsylvania law

when a corporation enters into a contract, the contract is an agreement of the legal

entity – the corporation – rather than a contract binding its individual members.  See

Walsh Alarm Sec. Group, Inc., 95 F. App'x 399, 402 (3d Cir. 2004) ("Unless the

corporate officer extends promises in his individual capacity, the participation theory

[for imposing individual liability] does not apply in the context of an action for

breach of contract.  Whenever a corporation makes a contract, it is the contract of the

legal entity – of the artificial being created by the charter – and not of the individual

members.") (quoting Bala Corp. v. McGlinn, 144 A. 823, 824 (Pa. 1929)) (internal

quotation marks omitted).  Mr. Sharma is not a party to the alleged contract that forms the basis for Plaintiff's breach of contract claims, and he is not alleged to have made personal promises in his individual capacity.  Accordingly, we can perceive no basis upon which Mr. Sharma could bear personal liability for the breach of such contract.

With respect to Plaintiff's ADEA claim, it is clear that Mr. Sharma is not a proper defendant because he was not the employer, but was instead only an executive of JPC – the employing and contracting entity.  The ADEA does not permit individual liability in such circumstances.  See Gude v. Rockford Center, Inc., 699 F. Supp. 2d 671, 680 (D. Del. 2010) ("[T] ADEA does not provide for individual liability."); Perepchuk v. Friendly's Ice Cream Corp., Civ. No. 97-1988, 2000 WL 1372876, at *4 (M.D. Pa. Mar. 28, 2000); Lantz v. Hospital of the University of Pennsylvania, Civ. A. No. 96-2671, 1996 WL 442795, at *6 (E.D. Pa. July 30, 1996); cf. Hill v. Borough of Kutztown, 455 F.3d 225, 247 n.29 (3d Cir. 2006) ("Hill did not bring an ADEA claim against Mayor Marino himself, nor could he have because the ADEA does not provide for individual liability.").  In this case, we perceive no basis upon which to include Mr. Sharma as a Defendant to Plaintiff's claims of age discrimination, since Mr. Sharma was not Mr. Kearney's employer, and because the ADEA does not provide for individual liability.  Accordingly, since Plaintiff has no

cause of action against Mr. Sharma under the ADEA, we recommend that the District Court deny Plaintiff's request to join Mr. Sharma as a Defendant to this claim.

### III.   <u>Recommendation</u>

For the foregoing reasons, it is hereby RECOMMENDED that Plaintiff's motion to amend his complaint (Doc. 51) be granted in part, and denied in part, as follows:

1.   Plaintiff should be granted leave to amend his complaint to include claims for breach of contract and for age discrimination in violation of the ADEA.

2.   In all other respects, Plaintiff's motion to amend his complaint should be denied.

It is further RECOMMENDED that Plaintiff's motion to join Varun Sharma as a Defendant (Doc. 50) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set

forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: June 7, 2012