## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK EDWARD KEARNEY,** | : | |
| | : | **Civil No. 3:11-CV-01419** |
| **Plaintiff** | : | |
| | : | **(Judge Caputo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JPC EQUESTRIAN, INC.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

## I.     INTRODUCTION AND STATEMENT OF THE CASE

*Pro se* Plaintiff, Mark Kearney initiated this action against JPC Equestrian, Inc.

("JPC"), and one of JPC's top executives, Varun Sharma ("Sharma"), in the

Commonwealth of Kentucky, 22nd Judicial Circuit, Fayette Circuit Court, at Civil

Case No. 11-CI-869, on February 16, 2011.  On March 9, 2011, JPC and Sharma

removed the case to the United States District Court for the Eastern District of

Kentucky, and the case was assigned to the Honorable Jennifer B. Coffman.

On August 2, 2011, Judge Coffman issued a Memorandum and Order

dismissing Plaintiff's claims against Sharma and transferring the case as against JPC

to this Court.  Since that time, the case appears to have remained locked at the

pleading stage, with the Plaintiff successively seeking leave to amend his complaint

to include additional allegations. That same course of litigation has brought this matter before this Court once again.

In the original complaint, Kearney alleged the following factual averments: On January 28, 2002, Kearney and JPC entered into a Sales Representation Agreement, whereby Kearney agreed to provide sales and marketing services for JPC. (Doc. 1-1.) Serving as a Sales Representative for JPC, Kearney was responsible for implementing a marketing program to sell JPC's products, including initiating business relationships with retailers within Kearney's geographic sales territory. Id. The agreement limits compensation for Kearney's services to "commissions on those sales made by the company which directly result from [Kearney's] introductions or other interventions." Id. Moreover, Kearney was to earn commissions under the agreement at a rate of ten percent of the total net payable invoices.[1] Id. Furthermore, the Agreement required JPC to provide samples at no cost to Kearney. Id. Finally, according to Agreement's terms, JPC would provide to Kearney a statement showing the calculation of "commissions paid, earned and/or reimbursed," on a monthly basis at the time of payment of commissions. Id. Kearney served as Sales Representative for JPC until

---

[1]"Net Payable Invoice," under the agreement, "shall equal the gross amount of an invoice, less discounts, sales taxes, if any, allowances, and returns."

August 6, 2010, when he claims that JPC terminated him because the company "decided to go with young female riders."

Subsequently, Kearney alleged that JPC failed to pay his ten percent commission on the "Petsmart account," instead paying him only five percent for the first four years. At that point, Kearney claimed that JPC converted the Petsmart account into a "house account," and thus paid him no commissions whatsoever. Kearney also alleges that JPC "sold direct" to a number of Kearney's customers in order to avoid paying Kearney a commission as required under the Agreement. Finally, Kearney alleged "unlawful dismissal," "mental anguish," and punitive claims. (Id.)

JPC moved to dismiss the complaint on September 16, 2011. (Doc. 30.) Following briefing on the motion, we issued a report and recommendation in which we recommended that the District Court dismiss all of Kearney's claims except for those claims alleging breach of contract. (Doc. 42.) On March 26, 2012, the District Court entered an order adopting the report and recommendation, and dismissed all claims other than Plaintiff's claims for breach of contract, but did so without prejudice to the Plaintiff endeavoring to amend his complaint if he believed he had viable legal claims other than those for breach of contract. (Doc. 48.)

On April 16, 2012, Kearney filed two motions, seeking leave to add Varun Sharma as a Defendant pursuant to Rule 20 of the Federal Rules of Civil Procedure authorizing joinder of parties, (Doc. 50.), and leave to file an amended complaint to include not only claims for breach of contract, but also claims for: fraud; violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); negligent misrepresentation; breach of fiduciary duty and the implied covenant of good faith and fair dealing; tortious interference with contractual relations; and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"), (Doc. 51.).

In his motion in support of his proposed amended complaint, Kearney averred that he entered into a verbal employment agreement with JPC on January 28, 2002. According to Kearney, this agreement provided that all gross sales into Plaintiff's sales territory would be paid a commission of 10%, less shipping; no "house" accounts would be allowed; and no sales manager would be hired to oversee the sales territory. Several months later the contract was memorialized. (Doc. 1-1.) According to Plaintiff, when the parties entered into the oral agreement, JPC had no customers within Plaintiff's sales territory, and Kearney brought over 300 customers to JPC as a result of his efforts and his extensive contacts with potential customers in the field. (Doc. 51 ¶ 3.) Plaintiff claims that over eight years, he invested over

$600,000 of his own money developing the sales territory into one that grossed approximately $1.3 million in sales per year. (Id. ¶ 4.)

Despite these apparent successes, Plaintiff claims that soon after the contract was signed, problems emerged. Plaintiff contends that sales to large retail customers were only paid a 5% commission as opposed to the 10% commission agreed upon. In addition, at least one other account was converted into a "house" account, and no commission was paid on the account. Likewise, sales of "certain items" to unspecified customers in 14 unspecified states were allegedly paid no commissions. (Id. ¶ 5.) Other customers within Plaintiff's sales territory were allegedly omitted from the commission reports, and no sales to these customers yielded the commissions that Plaintiff alleges he was owed.

Plaintiff claims that on August 6, 2010, with no notice, Defendant terminated Plaintiff's contract via a telephone call. According to Plaintiff, the reason JPC gave for ending the sales relationship was that the company had "decided to go with young girls" as sales agents. (Id. ¶ 7.) At the time, Plaintiff was 56 years old and his sales territory had shown a 22% growth in gross sales year over year. (Id.)

On the basis of the foregoing representations, and supplemental factual averments set forth in the proposed amended complaint, Plaintiff sought leave to bring claims against JPC and Varun Sharma for breach of contract, fraud, negligent

misrepresentation, breach of fiduciary duty/implied duty of good faith, and tortious interference with contract. In addition, Plaintiff attempted to include new claims for alleged violations of RICO and the ADEA based upon the same alleged conduct. (Doc. 51.)

Upon careful consideration of Plaintiff's motions and the competing briefs, we found that Plaintiff's attempts to bring claims sounding in tort against JPC were unavailing. In contrast, we found that Plaintiff should be permitted to amend his complaint to include claims for breach of contract and age discrimination. We also found that Plaintiff failed to demonstrate why Varun Sharma should be joined as a Defendant in this action, since Plaintiff failed credibly to allege any actions that Mr. Sharma is claimed to have taken outside of his role as an executive with JPC, which is indisputably the party to the sales representative contract that provides the basis for Plaintiff's remaining colorable claims in this case. Accordingly, we recommended that Plaintiff's motions be granted in part and denied in part. In this regard, we recommended that Plaintiff's amended complaint be permitted to be filed, but only with respect to his claims against JPC for breach of contract and age discrimination. We recommended that the District Court decline to join Varun Sharma as a Defendant, or to permit Plaintiff to prosecute the various tort and RICO claims he sought leave to bring.

Undeterred, and instead of filing objections to the Court's report and recommendation, while the Court's report and recommendation remained pending before the District Court, Plaintiff sought leave yet again to file a second amended complaint. (Doc. 57.) The parties fully briefed this motion (Docs. 59, 60.), and the District Court declined to consider the request when ruling upon the Court's report and recommendation. Instead, the District Court entered an order adopting the Court's report and recommendation in toto, but referred Kearney's motion for leave to file a second amended complaint to this Court for initial consideration. (Doc. 61.)

Upon receipt of this referral, we promptly entered an order denying Kearney's motion for leave to file a second amended complaint, but directed Kearney to file an amended complaint, if he wished to do so, in accordance with the prior rulings of the Court by October 1, 2012. (Doc. 62.) Thereafter, Kearney filed a motion for leave to file a second amended complaint in order to include a claim against Varun Sharma individually for tortious interference with contractual relations, based upon allegations that Sharma interfered with Kearney's contractual relationships not in Sharma's capacity as CEO of JPC, but independently, through acts that denied both Kearney and JPC of the benefit of business opportunities arising out of Sharma's

alleged importation of equestrian goods from India directly. (Doc. 65.) Kearney then filed two additional motions that seek substantially identical relief.[2] (Doc. 67, 68.)

JPC and Sharma have opposed the motions, maintaining that the Court has already ruled upon Kearney's request to add substantially similar claims against Varun Sharma, and found them legally deficient. In addition, Defendants argue that Kearney's proposed amendments merely restate the elements of the claim he attempts to bring, without sufficient factual averments, and, therefore, fails adequately to state a claim upon which relief can be granted. (Doc. 69.) In essence, Defendants urge the Court to find that Plaintiff's renewed motion is merely a rehash of Plaintiff's prior requests, which were found unavailing, and Defendants, therefore, request that the motion be denied. Defendants also suggest that Kearney's efforts to involve Sharma in this litigation are motivated by personal animus, and are not based upon a legitimate claim to legal relief. (Id.)

Kearney has filed a reply brief in which he provides citation to Pennsylvania legal authority regarding the elements of a claim for tortious interference with contract, and pointing to factual allegations which show that he is making a claim

---

[2] Kearney's proposed second amended complaint is set forth as Document 57 on the docket of this action. (Doc. 57.) Kearney has not refiled another proposed second amended complaint, and thus we find that Plaintiff's motions for leave to file a second amended complaint (Docs. 65, 67, 68) are seeking permission to file a pleading in substantially the form contained in Document 57.

against Sharma in his individual capacity, and not as the CEO of JPC, and thus he argues that his renewed motion more clearly – and adequately – explains the factual and legal bases for the proposed amendment, which he contends he did not make sufficiently clear in his earlier motions. (Doc. 70.)

Upon consideration, we agree with Kearney that his specific request to amend his pleading to include a claim against Sharma for tortious interference with contractual relations for actions that Sharma allegedly took outside of his role as the chief executive of JPC has not been decided by this Court or the District Court. Furthermore, we agree with Plaintiff that he has made sufficient factual allegations in order to support this claim, at least at the pleading stage. We also disagree with Defendants that Kearney has improperly attempted to "recapitulate[] the same untenable legal arguments ... previously put forth in Plaintiff's earlier motions," (Doc. 69, at 1.), since Plaintiff's proposed second amended complaint does not include any claim that the Court has previously found unavailing, and because Plaintiff has included new factual allegations in support of his proposed claim for tortious interference with contractual relations against Varun Sharma in an effort to show that Sharma was acting independently from his capacity as CEO of JPC when he tortiously interfered with Plaintiff's contractual relations. Therefore, we will grant the motion to amend, permit Plaintiff to file a second amended complaint in order to

include a single, narrow claim against Varun Sharma for tortious interference with contractual relations, together with his claims for breach of contract and age and gender discrimination against JPC.

Although Plaintiff has not separately moved for leave to join Sharma as a Defendant pursuant to Rule 20 of the Federal Rules of Civil Procedure, we will exercise our discretion to join Sharma as a Defendant in this case because we find that Plaintiff has articulated a narrow claim against Sharma that arises out substantially similar facts that are at issue with respect to Plaintiff's claims against JPC, and because it is clear that Plaintiff is attempting to have Sharma joined as a Defendant in this action. Plaintiff will be directed to file this second amended complaint as a complete, freestanding document, to which Defendants will be directed to respond.

## III.  DISCUSSION

### A.   Motion to Amend - Legal Standard

Rule 15 of the Federal Rules of Civil Procedure sets forth the rules governing amended and supplemental pleadings. Rule 15(a) provides that if more than 21 days has elapsed after a Defendant has served a motion to dismiss under Rule 12(b), a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed.R.Civ.P. 15(a). The Rule directs that "[t]he court should freely give leave when justice so requires ." *Id.* Nonetheless, the policy favoring liberal

amendments is not "unbounded." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir.1990). The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court. Foman v. Davis, 371 U.S. 178, 182 (1962); Waterfront Renaissance Assoc. v. Phila., 701 F. Supp. 2d 633, 639 (E.D. Pa. 2010). A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir.2000) (citing Foman, 371 U.S. at 182).

In accordance with the foregoing guidelines, a court may deny leave to amend where the proposed amendment would be futile by attempting to assert claims for which the plaintiff is not entitled to relief. See Milburn v. Girard, 441 F. Supp. 184, 187 (E.D. Pa. 1977) ("One proper justification for denying leave to amend is futility. If the amendment sets forth a claim upon which, as a matter of law, plaintiff is not entitled to relief, leave to amend should be denied.") (citations omitted). It follows, therefore, that when considering whether to permit an amended complaint, a court may consider whether the plaintiff's proposed amended allegations state a claim upon which relief could be granted. See Smith v. Anchor Motor Freight Co., 428 F. Supp. 21, 22 (M.D. Pa. 1976). In other words, "the proper test for evaluating the legal

sufficiency of a proposed amended complaint is 'the same test that is used when the legal sufficiency of a pleading is challenged under Rule 12(b)(6) . . . ." Id. (quoting 3 Moore's Federal Practice ¶ 15.04(4) (1974)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure, in turn, provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel,

Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the

Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions. Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief."
> In other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

In   practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

**B. Plaintiff's Proposed Amended Complaint States a Claim for Tortious Interference with Contract Against Varun Sharma Individually**

At the outset, we disagree with Defendants' insistence that in the proposed second amended complaint Plaintiff has merely repackaged his earlier failed efforts to bring claims against both Sharma and JPC. As noted above, in the proposed pleading, Plaintiff has not included any claims that the Court has previously ruled upon, and he has included no new claims against JPC. Instead, Plaintiff has sought to include a single claim against Varun Sharma for tortious interference with contract. And although Plaintiff did previously endeavor to bring a claim for tortious interference with contract, his proposed new complaint makes clear that Plaintiff is seeking to bring this claim against Sharma solely for actions that Sharma allegedly took independent from his role as the CEO of JPC, but actions that interfered with both Plaintiff's and JPC's contractual relations and business dealings. This more carefully articulated claim is supported by factual allegations that, although still relatively general, nevertheless make clear the bases for Plaintiff's claims, and which may be explored in discovery between the parties. (Doc. 57, ¶¶ 14, 15, 36.)

Defendants declined to address in any detail the legal standards governing claims for tortious interference with contractual relations under Pennsylvania law, but we pause to summarize the elements of this claim.

16

The Third Circuit has explained:

> Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 530 (3d Cir.1998).

Acumed LLC v. Advanced Surgical Services, Inc., 561 F.3d 199, 212 (3d Cir. 2009).

In our prior report and recommendation, we rejected Plaintiff's attempts to bring a tortious interference claim against JPC, as we found such a claim to be barred by the "gist of the action" doctrine, since Plaintiff's claims against JPC actually sounded in contract, not tort. But in the proposed second amended complaint, Plaintiff makes clear that he is attempting to sue JPC's CEO, Varun Sharma, for tortious interference with contract based upon actions Sharma allegedly took outside of his role as an officer of JPC. Although Defendants do not squarely address this distinction, we find it is important to the potential viability of Plaintiff's restated claim under this legal theory.

We have identified at least three specific averments in the proposed amended complaint that Plaintiff has included in support of his putative tortious interference claim. In summary these allegations include:

- Sharma, in addition to acting as the CEO of JPC, also acts as an independent wholesaler of merchandise to certain accounts in the United States. (Doc. 57, at ¶ 14.)

- Sharma, at various times during the course of Kearney's relationship with JPC, bypassed JPC entirely, selling goods of the same character and type sold by JPC directly to retail customers, in Kearney's sales territory, including customers Kearney had developed for JPC without paying any commission to Kearney. (Id., ¶ 15.)

- On one or more occasions, Sharma, acting individually, NOT as an agent of JPC, has arranged sales of merchandise directly from manufacturers in India to high volume or specialized retailers in America, without allowing JPC or Kearney to participate in or earn commissions from the transaction. (Id., ¶ 36.)

Upon consideration, we do not share Defendants' view of these limited allegations as unreasonably vague, speculative, or wanting in detail. Instead, as discussed below, we conclude that these allegations, coupled with Plaintiff's other

factual and legal allegations set forth in the proposed second amended complaint are sufficient to support a single, narrow claim against Sharma for tortious interference with contract. Because we find these allegations sufficient to state a claim, we will grant Plaintiff's motion to amend the complaint in order to state a claim for tortious interference with contractual relations against Varun Sharma, in addition to Plaintiff's claims against JPC for breach of contract and age and gender discrimination.

### C. Joinder of Varun Sharma as a Defendant is Appropriate

Finally, we pause to consider whether Varun Sharma should be joined in this litigation as a Defendant. Rule 20(a) of the Federal Rules of Civil Procedure governs permissive joinder of a defendant, and provides in relevant part as follows:

> (2) *Defendants.* Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). The Third Circuit has instructed that when applying Rule 20, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is

19

strongly encouraged." <u>Hagan v. Rogers</u>, 570 F.3d 146, 153 (3d Cir. 2009) (quoting

<u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 724 (1966)) (interpreting Fed.

R. Civ. P. 20(a) regarding joinder of plaintiffs). "The prerequisite to invoking Rule

20 [in order to join a defendant] is the ability to demonstrate some right of relief

against the party to be joined." <u>USX Corp. v. Adriatic Ins. Co.</u>, 64 F. Supp. 2d 469,

476 (W.D. Pa. 1998).

In this case, Defendants insist that Plaintiff has failed to put forth sufficient

allegations in the second amended complaint to sustain a legitimate claim against

Sharma individually. Defendants recognize that Plaintiff has included three separate

paragraphs that contain factual allegations in support of his proposed claim of tortious

interference with contractual relations, but Defendants argue that these allegations are

mere "threadbare recitals of general conduct, [which,] even when read in a light

favorable to Plaintiff, fall woefully short of stating any legitimate claim against Mr.

Sharma individually." (Doc. 69, at 8.) Defendants also characterize the new

allegations as speculative and vague.

We disagree. As we noted above, Plaintiff's newly stated allegations against

Varun Sharma include the following pertinent averments:

- Sharma, in addition to acting as the CEO of JPC, also acts as an independent wholesaler of merchandise to certain accounts in the United States. (Doc. 57, at ¶ 14.)

- Sharma, at various times during the course of Kearney's relationship with JPC, bypassed JPC entirely, selling goods of the same character and type sold by JPC directly to retail customers, in Kearney's sales territory, including customers Kearney had developed for JPC without paying any commission to Kearney. (Id., ¶ 15.)

- On one or more occasions, Sharma, acting individually, NOT as an agent of JPC, has arranged sales of merchandise directly from manufacturers in India to high volume or specialized retailers in America, without allowing JPC or Kearney to participate in or earn commissions from the transaction. (Id., ¶ 36.)

We have concluded that these allegations, coupled with Plaintiff's other factual and legal allegations set forth in the proposed second amended complaint are sufficient to support a single, narrow claim against Sharma for tortious interference with contract. Because we find these allegations sufficient to state a claim, we also find that joinder of Sharma as a Defendant in this action is appropriate since the claim

alleged against him arises out of the same or similar transactions or occurrences as those involving JPC, and are likely to involve related questions of law and fact.

## IV.   <u>ORDER</u>

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT Plaintiff's motions for leave to amend his complaint (Docs. 65, 67, 68.) are GRANTED as follows:

1. Plaintiff shall be permitted to file a second amended complaint, in the form set forth in Document 57 on the docket in this case, in order to include a claim for tortious interference with contract against Varun Sharma individually.

2. Defendants shall answer or otherwise respond to the second amended complaint in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge