# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARK EDWARD KEARNEY,** : | **CIVIL ACTION NO. 3:11-1419** |
| **Plaintiff** : | |
| v. : | (MANNION, D.J.[1]) |
|  : | (CARLSON, M.J.) |
| **JPC EQUESTRIAN, INC., and** : | |
| **VARUN SHARMA,** : | |
| **Defendants** : | |
| : | |

## M E M O R A N D U M

Pending before the court is the appeal of defendant JPC Equestrian, Inc., ("JPC"), of a non-dispositive order entered by Magistrate Judge Martin C. Carlson on October 23, 2012, granting the plaintiff's motion to file a second amended complaint to include a claim against Varun Sharma for tortious interference with contractual relations, together with his already existing claims for breach of contract and age and gender discrimination against defendant JPC. (Doc. No. 72)[2]. Based upon the court's review of the appeal

---

[1]The instant action was originally assigned to the Honorable A. Richard Caputo. By verbal order, on January 4, 2013, the matter was reassigned.

[2]The court notes that Judge Carlson entered his order on October 23, 2012. (Doc. No. 71). At that time, the action was assigned to District Judge A. Richard Caputo. The defendant filed its appeal of Judge Carlson's order shortly thereafter on November 6, 2012, (Doc. No. 72), and the plaintiff filed a response on November 20, 2012, (Doc. No. 75). However, the appeal was mistakenly docketed simply as "objections" to Judge Carlson's order not an appeal. Based upon the mistaken docket entry, the "objections" were not ruled upon by either Judge Carlson or Judge Caputo, as of January 4, 2013,
(continued...)

and related materials, the appeal will be denied.

The defendant's appeal is brought pursuant to Fed.R.Civ.P. 72(a) and Local Rule 72.2, which provides, in relevant part, that "[a]ny party may appeal from a magistrate judge's order determining a non-dispositive pretrial motion . . . in which the magistrate judge is not the presiding judge of the case." L.R. 72.2; *accord* Fed.R.Civ.P. 72(a); 28 U.S.C. §636(b)(1)(A). In considering the defendant's appeal, the court keeps in mind that "[a] Magistrate Judge is accorded wide discretion in addressing non-dispositive motions." Walsh v. Krantz, 2009 WL 321585 (M.D. Pa., Feb. 9, 2009) (citations omitted), *aff'd by* 386 Fed. App'x 334 (3d Cir. 2010). Moreover, a court may not reverse, modify, or vacate a magistrate judge's order addressing a non-dispositive

---

²(...continued)
when the case was transferred to the undersigned by verbal order. It was not until April 17, 2013, when the court was reviewing the status of a number of cases which were verbally transferred to the undersigned that it was discovered that the "objections" were, in fact, an appeal of Judge Carlson's order pursuant to Fed.R.Civ.P. 72(a) and L.R. 72.2. The docket was thereafter amended to reflect the matter as an appeal of Judge Carlson's order and was placed on the court's list for consideration.

While the court was preparing the instant memorandum and accompanying order, understandably unaware of the pending appeal, on September 3, 2013, Judge Carlson prepared an order indicating that the matter is ready for trial and directing the parties to advise the court as to the status of the case, including whether the parties consent to have the matter scheduled for trial by Judge Carlson, or referred to the undersigned for the scheduling of a trial date. (Doc. No. 76). In light of the instant memorandum and accompanying order affirming Judge Carlson's ruling, it is assumed that Judge Carlson will re-set appropriate deadlines for the filing of the second amended complaint and remaining pre-trial matters.

matter unless that order is "clearly erroneous or contrary to law." 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(a); Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 145 n.27 (3d Cir. 2009); Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1113 (3d Cir. 1986). Simply because the district judge would have decided the issue differently does not provide a basis to grant an appeal from an order of a magistrate judge on a non-dispositive matter. F.T.C. v. NHS Sys., Inc., 2100 WL 5979573, at *3 (E.D.Pa., Nov. 30, 2011); Toth v. Alice Pearl, Inc., 158 F.R.D. 47, 50 (D.N.J. 1994). Instead, "a finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Haines v. Liggett Grp., Inc., 975 F.2d 81, 92 (3d Cir. 1992); In re Mushroom Direct Purchaser Antitrust Litigation, 2012 WL 5199388, at *1 (E.D.Pa., Oct. 22, 2012); Dome v. Petroleum Ltd. v. Employers Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J. 1990). Moreover, a determination by a magistrate judge is contrary to law if the magistrate judge misinterpreted or misapplied the applicable law. Gunter v. Ridgewood Energy Corp., 32 F.Supp.2d 162, 164 (D.N.J. 1998). It is the appealing party that has the burden to demonstrate that the magistrate judge's decision was clearly erroneous or contrary to law. Cardona v. Gen. Motors Corp., 942 F.Supp. 968, 971 (D.N.J. 1996).

With regard to a motion to amend, Fed.R.Civ.P. 15(a) directs that "[t]he court should freely give leave [to amend] when justice so requires." The

3

decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the court. Foman v. Davis, 371 U.S. 178, 182 (1962); Waterfront Renaissance Assoc. v. Phila., 701 F.Supp.2d 633, 639 (E.D.Pa. 2010).

The test for evaluating an amended complaint is the same as that used for determining the legal sufficiency of a pleading under Fed.R.Civ.P. 12(b)(6). See Smith v. Anchor Motor Freight Co., 428 F.Supp. 21, 22 (M.D.Pa. 1976). That test provides that the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). However, the court need not accept inferences drawn by the plaintiffs if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The court also need not accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 554 (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. See also Ashcroft v. Iqbal, 556 U.S. 662

(2009) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a claim and must state a claim that is plausible on its face) (quoting Bell Atlantic Corp. v. Twombly, supra, and providing further guidance on the standard set forth therein).

Here, the plaintiff sought to file a second amended complaint to include a claim for tortious interference with a contractual relationship against Mr. Sharma, the Chief Executive Officer of JPC, in his individual capacity[3]. In Pennsylvania, a plaintiff claiming tortious interference with an existing contract[4] must show: (1) the existence of a contract; (2) defendant's intent to

---

[3]The plaintiff had previously tried to amend his complaint to, among other things, add Mr. Sharma as a defendant alleging tortious interference with contractual relations. (Doc. No. 51). Upon consideration, Judge Carlson determined that the plaintiff had failed to demonstrate why Mr. Sharma should be joined as a defendant since the plaintiff had failed to allege any actions which Mr. Sharma had taken outside of his role as an executive with JPC, which is the party to the sales representative contract that provides the basis for the plaintiff's claims. As a result, Judge Carlson filed a report recommending that the plaintiff's motion to amend be denied on this basis. While that report was pending, the plaintiff filed the motion to file a second amended complaint which led to the order that is now the subject of this appeal. In the meantime, Judge Caputo, to whom the matter was previously assigned, adopted Judge Carlson's report, but referred the plaintiff's motion to file a second amended complaint back to Judge Carlson for initial consideration. (Doc. No. 61).

[4]Claims for tortious interference can involve either existing or prospective contracts. The defendant argues that the plaintiff has failed to adequately allege whether he asserts a claim for interference with an existing
(continued...)

5

harm plaintiff by interfering with that contract; (3) that defendant's interference was without justification or privilege; and (4) damages[5]. [Feury v. Provco Grp., Ltd., 2010 WL 2527678 (E.D. Pa., June 17, 2010)](#) (citing [Acumed LLC v. Advanced Surgical Serv. Inc., 561 F.3d 199, 212 (3d Cir. 2009)](#)).

In considering the plaintiff's proposed second amended complaint, Judge Carlson found that, although his allegations were still relatively general, at the pleading stage, the plaintiff made sufficient factual allegations in order to support his claim of tortious interference with contractual relations against Mr. Sharma. As such, in his discretion, Judge Carlson granted the plaintiff leave to file a second amended complaint to include this claim. This court finds that Judge Carlson's decision was neither clearly erroneous nor contrary to law.

The plaintiff has alleged, in relevant part:

8. On or about January 28, 2002, Kearney and JPC entered into a

---

[4](...continued)
or prospective contract. It is apparent from both the plaintiff's proposed amended complaint, as well as his brief responsive to this appeal, that he is alleging interference with an existing contract, i.e., that entered into with JPC on or about January 28, 2002.

[5]The court notes that the defendant made no attempt to discuss legal standards governing claims for tortious interference with contractual relations under Pennsylvania law before Judge Carlson. Despite its failure to do so before Judge Carlson, the defendant now attempts to argue that the plaintiff failed to adequately set forth the elements of his claim for tortious interference with contractual relations.

Sales Representation Agreement ("the Agreement"), . . . Under the terms of the Agreement, Kearney was to act as the marketing representative for the various equine-related products sold by JPC, in a defined territory, which included all or portions of the states of Colorado, Idaho, Indiana, Illinois, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Ohio, Tennessee, Texas, and Wisconsin. Over the course of the party relationship, the sales territory evolved.

10. The Agreement expressly provides that Kearney served as an independent contractor, rather than as an employee of JPC.

11. As compensation for his services, Kearney was to be paid a commission of 10% of the total net payable invoices for the goods he sold.

\* \* \*

14. Sharma, in addition to acting as the CEO of JPC, also acts as an independent wholesaler of merchandise to certain accounts in the United States.

15. Sharma, at various times during the course of Kearney's relationship with JPC, bypassed JPC entirely, selling goods of the same character and type sold by JPC directly to retail customers, in Kearney's sales territory, including customers Kearney had developed for JPC without paying any commission to Kearney.

\* \* \*

35. Sharma, in his individual capacity, and Kearney are not in privity of contract, because Kearney's contractual relationship was with JPC, not [Sharma] individually.

36. On one or more occasions, Sharma, acting individually, NOT as an agent of JPC, has arranged sales of merchandise directly from manufacturers in India to high volume or specialized retailers in America, without allowing either JPC or Kearney to participate in or earn commissions from the transaction.

37. This conduct constitutes tortious interference with the contractual rights of Kearney to market the products of JPC, because Sharma denied JPC the opportunity to import he products that he sold behind Kearney's back, denying Kearney the opportunity to earn a commission on these sales, made within his territory, to customers he had developed.

38. Kearney has been damaged by the tortious interference of Sharma, and this court should enter a monetary judgment against Sharma individually for his compensatory damages arising out of such tortious interference.

39. Sharma has acted with malice, oppression, and fraud toward Kearney in his tortious interference with Kearney's contractual rights, and in addition to a judgment of compensatory damages,

> Kearney is further entitled to a judgment for punitive damages in an amount sufficient to punish Sharma and to deter future similar conduct.

(Doc. No. 57).

Taking these allegations as true and considering all allegations and inferences in a light most favorable to the plaintiff, it cannot be said that the plaintiff has failed to state a plausible claim for tortious interference with contractual relations against Mr. Sharma. To this extent, the plaintiff has clearly alleged a contract with JPC by way of his allegations relating to the sales agreement entered into with JPC on January 28, 2002, with which Mr. Sharma allegedly interfered. Moreover, he has alleged damages by way of the loss of commissions as result of Mr. Sharma's actions in allegedly individually arranging the sales of merchandise directly from manufacturers in India to high volume or specialized retailers in America without allowing either JPC or Kearney to participate in or earn commissions from the transactions. Although the plaintiff does not specifically allege the elements of intent or lack of justification or privilege, these can certainly be inferred from the plaintiff's allegations that Mr. Sharma ". . . went behind [the plaintiff's] back . . ." to conduct the transactions in question and that he acted with ". . . malice, oppression, and fraud . . ."

Viewing all allegations and inferences in a light most favorable to the plaintiff, as he was required to do, Judge Carlson, in his discretion, allowed

9

the plaintiff to file a second amended complaint to include a claim of tortious interference with contractual relations against Mr. Sharma and joined Mr. Sharma as a defendant on the docket with respect to that the claim. The court finds that neither decision was clearly erroneous or contrary to law. The defendant's appeal will therefore be denied.

An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: October 2, 2013**
O:\Mannion\shared\MEMORANDA - DJ\2011 MEMORANDA\11-1419-01.wpd