## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK EDWARD KEARNEY,** | : | **Civil No. 3:11-CV-1419** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **JPC EQUESTRIAN, INC. and** | : | |
| **VARUN SHARMA,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I.    Statement of Facts and of the Case

This litigation stems from a broken and embittered commercial relationship

between an independent salesman and an equine-products company.  The plaintiff,

Mark Kearney, has sued JPC Equestrian, Inc. ("JPC") and its President, Varun

Sharma, alleging that the defendants breached the terms of a sales representation

contract by failing to pay Mr. Kearney sales commissions for products he sold on

behalf of JPC.  (Doc. 82.)  Additionally, Kearney alleged that Sharma tortiously

interfered with "contractual rights of Kearney to market the products of JPC," under

his contract with JPC, by causing another corporate entity that Sharma controlled to

engage in sales activity in Mr. Kearney's assigned territories, thereby undercutting the commissions that he would have received from JPC. (Id., ¶37.)

After the preliminary disposition of a number of claims, and fact discovery, the parties filed cross motions for summary judgment. We ruled upon these motions, (Doc. 133.), concluding that Kearney's contract claims were replete with disputed issues of fact, and that the resolution of these disputes must await trial by a jury. In contrast, we found insufficient evidence to support Kearney's tortious interference claim, and entered summary judgment in Sharma's favor on this claim alone.

In reaching this conclusion we observed that Pennsylvania law has adopted the Restatement (Second) of Torts § 766, governing the tort of malicious interference with contract. Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175 (Pa. 1979); see also Daniel Adams Assocs., Inc. v. Rimbach Pub., Inc., 519 A.2d 997, 1000 (Pa. Super. Ct. 1987). Section 766 explains the tort as follows:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) *between another and a third person* by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (emphasis added).

2

Thus, to maintain a claim for tortious interference, Kearney bore the burden of demonstrating:   (1) the existence of a contractual, or prospective contractual relationship between *the plaintiff and a third party*; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relationship, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual legal damages resulting from the defendant's conduct.  CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004).  We then found that Kearney–who only alleged interference with his own contract with JPC–had not come forward with sufficient evidence of interference in the performance of a contract between the plaintiff and a third party to allow this claim to move beyond summary judgment.

Kearney has now filed a motion to reconsider this ruling.  (Doc. 137.)  In this motion, Kearney voices a concern that we did not fully understand the nature of the goods allegedly being sold by the separate company operated by Sharma, and may have based our decision upon this factual misapprehension.  (Id.)  The parties have now fully briefed this motion, (Docs. 138, 140-143.), and it is, therefore, ripe for resolution.  For the reasons set forth below, the motion will be denied.  While we appreciate the plaintiff's concern that we may have misapprehended the facts, we did understand the factual background but we concluded as a legal matter that this claim

of tortious interference failed.   Therefore, while we deny this motion, we also take this opportunity to clarify our prior ruling for the parties.

## II.   Discussion

At bottom, Kearney's motion is in the nature of a motion to reconsider.   The legal standards that govern motions to reconsider are both clear, and clearly compelling.   "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).   Typically such a motion should only be granted in three, narrowly defined circumstances, where there is either:  "(1) [an] intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice". Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992 ).   As the United States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)).  "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds:  (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).

4

Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010).

Thus, it is well-settled that a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F.Supp. at 830.  Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995).  Moreover, it is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court.  Dodge, 796 F.Supp. at 830.  Rather, such a motion is appropriate only where the court has misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on that issue.  See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

In this case Kearney does not contend that there has been an intervening change in the controlling law.  Nor can this motion be premised on an assertion regarding the availability of new evidence that was not available when the court granted the motion for summary judgment, since the nature of the goods otherwise sold by Sharma's separate business was well known to the parties, and understood by

the court, at the time of our initial summary judgment ruling. Rather, Kearney's motion to reconsider turns on the idea that reconsideration of this prior ruling is necessary in order to "correct a clear error of law or fact or to prevent manifest injustice." Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010)

In this case, we find that there was no "clear error of law or fact" on our part. As a factual matter we understood the nature of Kearney's claims, and as a legal matter we concluded that those claims were insufficient with respect to the tort of interference with contractual relations, as that tort is defined under Pennsylvania law. Rather, there may have simply been a certain lack of clarity on our part in our articulated analysis of the failure of Kearney's tortious interference with contract claim. As we have noted, that claim, as alleged by Kearney, was premised upon the assertion that Sharma tortiously interfered with "contractual rights of Kearney to market the products of JPC," under his contract with JPC. Thus, the gist of this tort claim is an allegation that Sharma interfered with a contract to which he, as a CEO of JPC, was a party.

Construed in this way, this tortious interference with contract claim fails because: "Under Pennsylvania law, a claim for tortious interference will survive only if a defendant is not a party to the contract alleged to have been tortiously interfered

with.  See, e.g., Daniel Adams Assocs., Inc. v. Rimbach Publ'g, 360 Pa.Super. 72, 519

A.2d 997, 1000–02 (1987) (holding that a tortious interference claim could not be

maintained against a corporate officer of a publisher where the underlying agreement

was between the publisher and a sales representative because 'the corporation and its

agent are considered one so that there is no party against whom a claim for

contractual interference will lie'); Levin, 2001 WL 1807922, at *9 ('[T]he tortious

interference claim in Count II cannot be maintained by Levin on behalf of Funds, as

against Schiffman, because Schiffman is a 50% shareholder of Funds and would thus

be a party to the contract with the District.'); Aveyard v. Pennwalt Corp., No.

85–3529, 1990 WL 391308, at *3 (Pa.Ct.Com.Pl. Feb. 26, 1990) ('[A] corporate

manager is not a third party to the contract.')."  Kernaghan v. BCI Commc'ns, Inc.,

802 F. Supp. 2d 590, 597 (E.D. Pa. 2011).  See, e.g., Motise v. Parrish, 297 F. App'x

149, 152 (3d Cir. 2008) ("a party to the contract, may not tortiously interfere with the

contract.  See CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d

375, 384 (3d Cir.2004) (stating requirements for tortious interference with contract

under Pennsylvania law)"); Hasu Shah v. Harristown Dev. Corp., No. 1:12-CV-2196,

2013 WL 6567764, at *10 (M.D. Pa. Dec. 13, 2013); Clark Distribution Sys., Inc. v.

ALL Direct, Inc., No. 1:10-CV-2575, 2013 WL 3510878, at *6 (M.D. Pa. July 11,

2013); Corr. U.S.A. v. McNany, 892 F. Supp. 2d 626, 635 (M.D. Pa. 2012).

While our initial ruling in this matter may not have fully elucidated this rationale for the parties, creating the confusion which led to these latest filings, we trust that this opinion on Kearney's motion to reconsider more fully articulates the basis for our ruling, and defines the issues yet to be resolved in this litigation.

**III.   Conclusion and Order**

Accordingly, for the foregoing reasons, the plaintiff's motion to reconsider is DENIED (Doc. 137.)

So ordered this 6th day of March,  2015.


***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge